**RICHARD D. WILLIAMS (SBN 58640)**
rwilliams@williamslawfirmpc.com
**MINA HAKAKIAN (SBN 237666)**
mhakakian@williamslawfirmpc.com
**WILLIAMS LAW FIRM PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**CALIFORNIA SPINE AND
NEUROSURGERY INSTITUTE dba
SAN JOSE NEUROSPINE**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE** dba **SAN JOSE NEUROSPINE**, a California Corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>**BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS and DOES 1 to 100,**<br><br>                    Defendants. | **Case No.:** 3:22-cv-03782-JD<br><br>**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |

– 1 –

Plaintiff, California Spine and Neurosurgery Institute dba San Jose Neurospine, a California corporation, ("Plaintiff" or "SJN"), alleges as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act of 1974 ("ERISA").

2.     This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District where the breaches took place, and because the Defendant conducts a substantial amount of business in this Judicial District.

## II.   THE PARTIES

### a.   The Plaintiff

3.     SJN is a corporation organized under the laws of the state of California, with its principal place of business located in the Northern District of California.  Dr. Abebukola Onibokun is owner and principal of SJN and is the person who performed the surgery events giving rise to this action.

4.     SJN specializes in sophisticated surgical procedures involving minimally invasive spinal decompressive techniques; motion preserving spinal techniques; endoscopic spinal fusion techniques; robotic computer assisted image guided surgery; and complex spinal reconstruction.  SJN and its principal Dr. Onibokun possess and utilize world class expertise in the field of minimally invasive surgical techniques. ///

### b.  <u>The Defendant</u>

5.      Plaintiff is informed and believes that Anthem, Inc. is a corporation organized and existing under the laws of the State of Indiana[1].  Anthem, Inc. and its related entities are in the business of managing and underwriting health care benefit plans for individuals and corporations throughout the United States.  Anthem, Inc. does business in California primarily through a wholly owned subsidiary under the name Blue Cross of California d/b/a Anthem Blue Cross.  This California entity is one of a handful of large healthcare insurers that carry out much of the business of health insurance in this state.

6.      Anthem Blue Cross is an entity which does business as the underwriter and/or claims administrator of corporate health insurance plans governed pursuant to the provisions of ERISA.  In the administration of ERISA Plan claims, it is the responsibility of Anthem Blue Cross to participate in deciding which healthcare benefits claims will be paid under the plan; how much will be paid; and to decide which benefits claims will not be paid.  Thereafter, Anthem Blue Cross and/or the Plan itself will pay benefits to claimants such as SJN directly out of ERISA plan assets.  SJN alleges that Anthem Blue Cross, and not the ERISA plans themselves, had the responsibility and control to make the benefits determinations for the healthcare services claims made by SJN in this case.

7.      Anthem Blue Cross does business in California and throughout the United States as an independent licensee of the Blue Cross and Blue Shield Association (the "BCBS Association").  The Blue Cross and Blue Shield names and symbols are registered marks of the BCBS Association.  SJN is informed and

---

[1]      Plaintiff filed the complaint in this action on June 27, 2022 and erroneously identified Anthem Inc., an Indiana Corporation dba in California as Anthem Blue Cross as the Defendant in this action.  This First Amended Complaint is filed for the purpose of substituting Blue Cross of California d/b/a Anthem Blue Cross in place and instead of Anthem Inc.

**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1  believes, and thereon alleges, that Anthem Blue Cross does business in California as

2  the healthcare insurance claims administrator and/or underwriter with respect to the

3  claims at issue in this case primarily under the name Anthem Blue Cross, and

4  sometimes under the names of related Anthem entities.

5         8.     The patients for whom surgical services were provided by SJN as

6  applicable in this case are designated by initials herein as Patients ML, SE, KM, RJ,

7  CY, CR, FT, SK, DJ, ML, ME, MR, PG, and CM (collectively the "Patients") for

8  privacy.  A summary listing of the Patients, with amounts billed and partially paid by

9  Anthem Blue Cross is attached hereto as Exhibit A.

10         9.     Each of the Patients was or is a member or beneficiary of an ERISA plan

11  administered and/or underwritten by Anthem Blue Cross.  The Patients and their

12  participating plans are as follows:

13        A. Patient ML - - MAPR Technologies, Inc. Cobra

14        B.  Patient SE - - Operating Engineers H&W Trust

15        C.  Patient KM - - Tesla Motors, Inc.

16        D.  Patient RJ - - Advantel Inc. Cobra

17        E.  Patient CY - - Bay Area Delivery

18        F.  Patient CR - - Canon

19        G.  Patient FT - - Northrop Grumman

20        H.  Patient SK - - Ericsson

21        I.  Patient DJ - - California Field Iron Workers Trust Fund

22        J.  Patient ML - - Flextronics X

23        K.  Patient ME - - Pacific Gas and Electric Company

24        L.  Patient MR - - FBM

25        M. Patient PG - - Anthem Global PPO

26        N. Patient CM - - Boeing

27         10.    In each claim circumstance, SJN would receive a written assignment of

28

– 4 –

Patient rights.  A true and correct copy of the form of Assignment utilized by SJN is attached hereto as Exhibit B.  The Assignment in each instance conveyed and transferred to SJN all of the Patient's healthcare benefit coverage rights, rights to insurance and rights to healthcare plan reimbursement.  The assignments encompassed all rights to appeal or sue, and designated SJN as the Patient's authorized representative.

11.    SJN does not bring this suit against the ERISA plans for whom Anthem Blue Cross acted as administer or insurer in connection with SJN's claims in this action.  Plaintiff is informed and believes that Anthem Blue Cross, and not the ERISA plans themselves, exercised actual control over the determination and payment of the benefits claims submitted by SJN.

### c.  The Doe Defendants

12.    The true names and capacities of the Defendants sued herein as Does are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein. The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

## III.    CORE FACTS UNDERLYING THE SJN CLAIMS FOR PAYMENT

13.    In connection with each claim event, SJN provided surgery services after first carrying out a claim administration procedure.

14.    When Plan members and/or their dependents came to SJN for medical services they would present medical insurance cards in the name of Anthem Blue Cross or a related Blue Cross Blue Shield entity.  The relevant insurance contact

– 5 –

information was set forth on each medical insurance card, and directed SJN to www.anthem.com and a member services telephone number.

15.     In each case, SJN's practice was to have its office staff representative contact an Anthem Blue Cross representative by telephone for benefit eligibility confirmation and member coverage verification proper to performing any surgery services.  The practice was that SJN's office representative and the Anthem Blue Cross entity representative would discuss the proposed surgery event by telephone in advance of the services being performed, and in each such telephone communication the Anthem Blue Cross entity representative would advise SJN's representative that coverage existed for the patient and benefits were properly payable to SJN as an "out-of-network" provider.  The following sets forth in summary form the substance of the telephonic communications between SJN's representative and the Anthem Blue Cross entity representative which occurred prior to surgery services being performed in connection with SJN's claims for Patients asserted in this case:

a)  SJN's representative would call the Anthem Blue Cross entity claims office on the toll-free line set forth on the member identification card presented by the Patient.

b)  The Anthem Blue Cross representative would identify himself/herself by first name and/or initials.

c)  The Anthem Blue Cross representative would confirm that coverage under the subject ERISA plan was based on UCR ("usual and customary" rates) for the out-of-network provider seeking surgery eligibility verification.

d)  In the present case for example, the Anthem Blue Cross entity representative advised SJN's representative that the payment profile under the Pacific Gas & Electric Company ("PGE plan") in this case would be based on UCR at an 80% rate and that payment to SJN would

– 6 –

not be based on any Medicare fee schedule.  The Anthem Blue Cross entity representative also advised Plaintiff that the PGE ERISA plan utilized an Anthem Blue Cross PPO as primary insurance, with no pre-existing exclusion clause: no daily maximum, and an unlimited lifetime maximum.  The PGE plan was represented to be subject to an individual deductible of $1,000.00 and a family deductible of $2,000.00.  Plaintiff is informed and believes that while the percentage payment rates and deductible rates varied from plan to plan, the basic structure of the PGE Plan is representative of the other Plans at issue in this case.

    e)  The Anthem Blue Cross entity representative verified that SJN as an out-of-network provider was eligible to receive benefits payment under the subject plan.  Thereafter, Plaintiff would perform the surgical event for which verification was obtained.

16.    A copy of SJN's Insurance Verification form for patient ME under the PGE plan is attached hereto as Exhibit C.  SJN relied and reasonably relied on the Anthem Blue Cross entity telephonic representations with respect to Patient ME and the other Patients at issue in this case by providing surgery services to in response to the Anthem Blue Cross entity affirmation that SJN was eligible to receive benefits. But for the advance representations of the Anthem Blue Cross entity representatives in setting out the eligibility for benefits and the applicable payment methodology, SJN would not have provided or continued to provide surgery services to the Patients.

## IV.  PLAINTIFF'S BILLINGS SUBMITTED TO ANTHEM BLUE CROSS AND THE HEALTH CARE PLANS PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM PAYMENT

17.    SJN's billing forms were submitted on Form 1500, a standard, industry-wide claim submittal form for out-of-network healthcare providers.  Each Form 1500 submitted to Anthem Blue Cross contained an "X" in the box marked "Accept

– 7 –

Assignment?" thereby communicating to Anthem Blue Cross from the outset of the claim submittal process that the SJN claim was premised upon an assignment of patient benefits. The Form 1500 billings included all information necessary to enable Anthem Blue Cross to pay the SJN claims in ordinary course.

18.    The charges for healthcare services submitted by SJN to Anthem Blue Cross were in all instances usual, customary, and reasonable, and in accord with SJN's charges to non-Medicare patients insured by entities other than the subject plans in this case. Anthem Blue Cross has abused its discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay SJN's claims in accordance with ERISA requirements, practices and provisions, and SJN has suffered resulting damages in an amount to be proven at trial.

## V.    SJN HAS STANDING TO PURSUE CLAIMS AGAINST ANTHEM BLUE CROSS UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

19.    ERISA governs all aspects of health and medical benefits under ERISA plans, and authorizes a civil action to recover unpaid benefits and attorney's fees. SJN has standing to bring this lawsuit arising from its Assignments from patients.

20.    Anthem Blue Cross in this action is the proper party defendant for an ERISA benefits recovery action. *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

## VI.    SJN HAS EXHAUSTED ADMINISTRATIVE REMEDIES

21.    For the claim events in this action, Anthem Blue Cross provided "Explanation of Benefits" documents which purported to explain the payment reductions applied with respect to SJN's billing submittals. For some claims, additional appeal response documents were also provided. The EOBs and appeal response documents set forth as a grounding for Anthem's claim payment reductions

– 8 –

that Plaintiff's billings exceeded "maximum allowed amount," or words to similar effect.  However, the EOBs and appeal response documents were woefully deficient in their explanation of the purported grounding for the reduction and/or non-payment of SJN's bills.  A statement that the SJN billing exceeds maximum allowed amount is a meaningless non sequitur, and provides no explanation or basis for reduction at all. Such a vague and non-specific statement in an EOB does not constitute a final determination with respect to the payment of SJN's bills.

22.    SJN has appealed many of the billing reductions asserted in connection with the claims in this case.  However, Anthem Blue Cross in their EOBs and appeal response documents has violated the applicable claims procedure regulations governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1 (b).  Of particular significance in this case are the regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1 (g)(1).  That section requires that the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination.  The regulations require the following:

"The notification shall set forth, in a manner calculated to be understood by the claimant - -

     i.    The specific reason or reasons for the adverse determination;

    ii.    Reference to the specific plan provisions on which the determination is based;

   iii.    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

   iv.    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the

– 9 –

Act following an adverse benefit determination on review."

23.    These notification requirements were not met by the EOBs and/or appeal response documents in the present action, and the regulations set forth a consequence of a failure by Anthem Blue Cross to comply with adverse benefit notification requirements in its EOBs and/or appeal denials.  29 C.F.R. section 2560.503-1(1) provides:

> "(l) <u>Failure to establish and follow reasonable claims procedures:</u>
>
> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

24.    SJN is deemed by law to have exhausted administrative remedies because Anthem Blue Cross failed to establish and follow reasonable claims procedures as required by ERISA.  Anthem Blue Cross failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1.  Among other things, Anthem Blue Cross:

- Failed to set out the specific reason for nonpayment/underpayment of Plaintiff's claims in its responses transmitted to Plaintiff during the administrative review process;
- Failed to reference the specific Plan provisions upon which its nonpayment/underpayment determinations were based;
- Failed to give a description of additional materials or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the nonpayment/underpayment determinations were based;

- Failed to state the nonpayment/underpayment determinations in a manner calculated to be understood by Plaintiff;

- Failed to provide a reasonable opportunity for full and fair review of the nonpayment/underpayment determinations;

- Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff;

- Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

## VII.   ASSIGNMENTS TO HEALTH CARE PROVIDERS ARE FAVORED UNDER ERISA LAW

25.     In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989) the Ninth Circuit Court determined that assignments of patient benefits under healthcare plans are a favored practice to ensure efficiency in the delivery of healthcare services.  "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA."  *Misic, supra,* at 1378.  Assignees of a claim for collection of healthcare benefits have been permitted to bring suit on the basis of derivative standing.  *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare providers to whom beneficiaries assigned their benefits claims for medical care from such providers).  Granting standing to healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties.  *See id.*  The authority of *Misic* and *Simon* was recently

**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.,* (9th Cir. No. 20-56122, January 14, 2022).

**VIII.   <u>ANTHEM BLUE CROSS HAS WAIVED AND/OR IS ESTOPPED FROM ASSERTING ANY "ANTI-ASSIGNMENT" CLAUSES CONTAINED IN THE PATIENTS' HEALTHCARE PLANS</u>**

26.    Under federal ERISA law, a healthcare plan and its claim administrators are subject to specific rules where benefits are to be denied with respect to claims of a healthcare provider.

27.    When making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v.  United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir.  2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699,  719 (9th  Cir.  2012) ("*Harlick*").  "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" See *id.*

28.    Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spinedex*, *supra,* 770 F.3d at 1296.  However, a plan administrator can waive the right to enforce an anti-assignment provision.  *See Spinedex supra*. at 1296–97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spinedex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim  process in that case because "there [wa]s no  evidence  that  [the  claims administrator] was aware, or should have been aware, during the administrative process that [the plaintiff-medical provider] was acting as its patient's assignee").

29.    SJN has pleaded waiver facts in this action in accordance with *Spinedex* and *Harlick*.  Each SJN billing form included an "X" in the Form 1500 which notified

**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

the claims administrator that the claim was being pursued by way of an assignment. Moreover, the claims administrator in each claim paid a part of the claim submitted by SJN.  These facts establish that Anthem Blue Cross has waived anti-assignment.

30.     Further, Anthem Blue Cross is estopped from asserting anti-assignment by the fact that during the claim administration review process it represented that SJN was eligible to receive plan benefits.  The authority of *Spinedex* and *Harlick* on the waiver and estoppel issues was reaffirmed in *Beverly Oaks Physicians Surgery Center, LLC v. Blue Cross and Blue Shield of Illinois,* 983 F. 3d 435 (9th Cir. 2020) ("*Beverly Oaks*").  Under *Beverly Oaks*, the promise that SJN was eligible to receive plan benefits as an out-of-network healthcare provider is sufficient to estop Anthem Blue Cross from asserting a plan anti-assignment clause in this case.

## IX.     ANTHEM BLUE CROSS HAS NO GROUNDING TO ASSERT STATUTE OF LIMITATIONS WITH RESPECT TO PLAINTIFF'S CLAIMS

### A.     Anthem Blue Cross Failed To Provide A Final Determination; And Accordingly, No Statute Of Limitations Has Begun To Run

31.     After *Beverly Oaks* was decided on December 18, 2020, this Court's determination became the subject of a District Court opinion issued May 25, 2021 in *Brand Tarzana Surgical Institute, Inc. v. Aetna Life Insurance Company, Inc., et. al.,* Case No. 18-9434 DSF (AGRx) ("*Brand v. Aetna*").  In its Order involving anti-assignment defenses (Dkt. 72), the District Court in *Brand v. Aetna* concluded that there was no final determination in that case due to a failure of the insurer to submit adequate notification of adverse benefits determinations:

> Aetna argues some claims are untimely because some of the plans limit the time period in which one must seek recovery, and Brand's lawsuit is outside those time periods. Br. at 14-17; Aetna Suppl. Br. at 16-17. However, given the inadequacies of the adverse benefit notifications discussed above, there was no final decision on those claims. The contractual limitations therefore do not

– 13 –

apply.  (Dkt. 72, p. 8)

32.     The District Court in *Brand v. Aetna* cited to earlier Ninth Circuit

authority as the basis for its statute of limitations determination:

> *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1989) supports this conclusion. In *White*, the Ninth Circuit held that "[w] hen a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered." *Id*.  (Dkt. 72, p. 8-9)

33.     The *Brand v. Aetna* court grounded its statute of limitations

determination on the ERISA claims procedures regulations:

> In reaching its decision, the Ninth Circuit [in *White*] reasoned that an administrator should not be permitted to deter a claimant from filing a timely appeal "by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively." *Id*. at 351.  (Dkt, 72, p. 9)

34.     The District Court in *Brand v. Aetna* found the reasoning in *White* was

applicable to contractual time limits for filing a civil action in addition to an

administrative appeal. The District Court cited to *Bourgeois v. Employees of Santa Fe*

*International Company*, 215 F.3d 475, 482 (5th Cir. 2000) (holding where an

employer's failure to give an employee adequate claims procedure information caused

the employee to fail to exhaust his administrative remedies and extinguished the

employee's time to apply for benefits, his claim should be remanded to the plan

administrator and the employer was estopped from arguing the employee's claim was

time-barred); and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d

1083, 1089 (9th Cir. 2012) (holding a district court abused its discretion by finding a

claim was time-barred because the letter outlining administrative remedies and time to

sue was ambiguous and "[a] communication from a claims administrator to a plan

participant should clearly apprise her of her rights and obligations under the plan");

and *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006) (finding the failure

to comply with ERISA's notification procedures was a "highly significant factor" for

– 14 –

determining whether the statutory limitations period began running).

35.     Similarly in the present action, the Anthem Blue Cross EOBs and appeal responses failed to provide adverse benefits notification sufficient to trigger the running of a statute of limitations.  Absent a final determination, the Plaintiff claims remain fully open for further administration claim consideration and claim resolution at trial.

**B.     A Three-Year Period of Equitable Tolling Applies To Preclude Anthem Blue Cross From Asserting Statute of Limitations as a Defense to the Claims Asserted by SJN in this Action**

**(1)     California Law Applies For Statute of Limitations Purposes As The State Where The Claims Arose**

36.     The statute of limitations in this case is subject to equitable tolling for the period December 18, 2017 to December 17, 2020.  All of the subject claims fall within the statute if equitable tolling is applied.

37.     ERISA is silent as to the statute of limitations to be applied to the benefits claims asserted by SJN in this case.  Where a statute of limitations is lacking in federal court litigation, the District Court is to look to and apply (i.e. borrow) the most analogous state statute.  The Ninth Circuit has ruled that the applicable borrowing statute in the context of an action for ERISA benefits is the state where the claim for benefits arose.  *Gordon v. Deloitte & Touche LLP Group Long Term Disability Plan,* 749 F. 3d 746, 750 (9th Cir. 2014) (citing *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program,* 222 F. 3d 643 (9th Cir. 2000).

38.     In the present case, the claims for benefits arose in California, and the applicable statute is the 4-year California statute for breach of contract.  *See Northern Cal. Retail Clerks v. Jumbo Markets, Inc.* 906 F. 2d. 1371, 1372 (9th Cir. 1990) However, when a statute of limitations is borrowed, the tolling and suspension

– 15 –

**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

provisions which are part of the statute under applicable state law must also be borrowed in the federal court action, and in the present case California equitable tolling provisions will apply to extend the application of the statute. *See, also, Heimeshoff v. Hartford Life & Accident Ins. Co.,* 571 U.S. 99, 113 (2013) (equitable tolling of a statute of limitations may be appropriate in extraordinary circumstances).

### (2)   Waiver And Estoppel Apply and Provide a Grounding For Equitable Tolling of the Statute of Limitations

39.   The Supreme Court in *Heimeshoff* stated (571 U.S. at 104) that waiver and estoppel may prevent a claims administrator from invoking a limitations period as a defense.  Here, waiver and estoppel both apply to preclude Anthem Blue Cross from asserting statute of limitations without an extension for a 3-year equitable tolling period, as defined below.

### (3)   Equitable Tolling Begins To Run No Later Than December 18, 2017 And Continues To Apply Until December 17, 2020

40.   It appeared to be settled law in the Ninth Circuit from and after 2014 that waiver of an anti-assignment clause by a healthcare plan claims administrator would occur if the administrator was aware, or should have been aware during the administrative process that a healthcare provider was asserting claims pursuant to a patient assignment. *Spinedex, supra,* 770. F. 3d at 1296-97.  Under *Spinedex,* and the Ninth Circuit's 2012 decision in *Harlick*, a healthcare claims administrator was barred by waiver and estoppel from failing to give a reason for a benefits denial during the pre-litigation claim administration process and then raising that reason for the first time when the denial of plan benefits was challenged by the healthcare provider in federal court.

41.   Despite what should have been a controlling body of Ninth Circuit law, a District Court in the Central District of California in 2016 struck out in an unexpected

and erroneous new direction in the handling of anti-assignment clauses.  In the case of *Brand Tarzana Surgical Institute, Inc. v. International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan*, District Court No. 2-14-cv-03191-FMO-AGRx ("*Brand Tarzana v. ILWU*") the District Court entered an Order Regarding Cross Motions for Summary Judgment on March 8, 2016.  (Dkt. 69)  In its Order, the District Court concluded that Plaintiff Brand Tarzana had failed to prove waiver of an anti-assignment clause that was contained in the ILWU-PMA Welfare Plan which was the subject of that case.  The District Court Order dated March 8, 2016, concluded that the Plan's failure to raise the anti-assignment clause prior to litigation did not constitute waiver, since the anti-assignment clause was not "a substantive basis for denial" (Dkt 69, p. 15)  The District Court wrongly concluded in *Brand Tarzana v. ILWU* - - in direct contradiction to the controlling authority of *Spinedex* and *Harlick* - - that the failure to raise the anti-assignment clause was irrelevant to a pre-litigation denial of a healthcare claim since, until a suit was filed, there was nothing  that occurred within the range of conduct the anti-assignment clauses purported to prohibit.  (Dkt. 69, pp. 15-16) In the *Brand Tarzana v. ILWU* circumstance, where none of the claims at issue were denied in the pre-litigation administrative claim process on the basis of the anti-assignment clause, the District Court erroneously decided that any failure to raise the clause pre-litigation as a ground for denial of plaintiff's claims did not constitute a waiver of the provision.  (Dkt. 69, p. 16)  This District Court ruling on March 8, 2016 put in place an unfortunate and ill-conceived framework for addressing anti-assignment clauses which rendered it impossible for healthcare providers to file and pursue ERISA benefits recovery lawsuits where the subject ERISA plans contained an anti-assignment provision.  The erroneous framework which was adopted by the District Court in 2016 was subsequently put aside on December 17, 2020 when the Ninth Circuit put anti-assignment law back on a proper footing in its published *Beverly Oaks* decision, but

– 17 –

1  until corrective action was taken in *Beverly Oaks* in 2020, healthcare providers such as
2  SJN had no realistic or viable means of pursuing their assignment-based healthcare
3  claims in federal court.  In the present action, the healthcare claims which arose during
4  the period when Ninth Circuit law was premised on a mistaken conceptual framework
5  favoring anti-assignment should be subject to equitable tolling.

6       42.     Brand Tarzana immediately appealed the adverse District Court ruling of
7  March 8, 2016.  *See* Ninth Circuit Case No. 16-55503, *Brand Tarzana Surgical*
8  *Institute, Inc v. ILWU-PMA Welfare Plan,* 706 F.App'x 442 (9th Cir. 2017).  However,
9  the Ninth Circuit panel that heard the case on appeal affirmed the District Court ruling
10  by way of a Memorandum Decision filed December 18, 2017.  (Dkt. 76)  The Ninth
11  Circuit in *Brand Tarzana v. ILWU* erroneously agreed with the District Court that the
12  anti-assignment clause could indeed be held in reserve during the pre-litigation claims
13  administrative process, and then be put forward for the first time in benefits recovery
14  litigation as a "litigation defense".

15       43.     The legal issue of anti-assignment clauses as a "litigation defense" was
16  the subject of ongoing litigation over a period of three years from the time the *Brand*
17  *Tarzana v. ILWU* Memorandum Decision was entered in the Ninth Circuit (December
18  18, 2017) to December 17, 2020 when the published opinion in *Beverly Oaks* was
19  issued which put the anti-assignment issue to rest once and for all.  The Ninth Circuit
20  filed its published opinion in *Beverly Oaks,* on December 17, 2020, which effectively
21  repudiated and reversed its earlier *Brand Tarzana v. ILWU* Memorandum Decision.
22  Anti-assignment in the case of *Brand Tarzana v. ILWU* had been considered a
23  "litigation defense" and not a substantive basis for claim denial - - but this "litigation
24  defense" framework only lasted in this Circuit for three years until it was rejected in
25  *Beverly Oaks* on December 17, 2020.  The *Beverly Oaks* panel decided that there was
26  "no rationale" for condoning an insurer or plan administrator's course of conduct in
27  failing to raise the anti-assignment provision during the administrative claims process

28

– 18 –

and then later asserting that provision as a "litigation defense" to avoid payment of benefits.  The *Beverly Oaks* Court found that the *Brand Tarzana v. ILWU* "litigation defense" framework as a basis to deny waiver of the anti-assignment clause left an insurer or plan administrator unaccountable for prior conduct contrary to its litigation provision.

44.     Indeed, taking it a step further, the *Beverly Oaks* Court further concluded that Blue Cross in that case made an actionable misrepresentation to the surgery center plaintiff in *Brand Tarzana v. ILWU*, by stating that plaintiff was "eligible' to receive plan benefits.  The *Beverly Oaks* Court in its published opinion of December 17, 2020 concluded that this misrepresentation estopped Blue Cross from asserting the anti-assignment defense.

45.     Waiver and estoppel apply in this case to preclude an anti-assignment defense, just as they did in *Beverly Oaks,* and *Beverly Oaks* reopened the door for filing of ERISA benefits recovery actions by healthcare providers based on patient assignments of benefits.  The statute of limitations should be tolled for the three-year period in which the door to benefits recovery was improperly closed.

> **(4)     SJN Filed A Test Case Against Anthem Blue Cross To Challenge The Law As It Was Erroneously Framed In *Brand Tarzana v. ILWU***

46.     Confronted with the adverse ruling of *Brand Tarzana v. ILWU,* SJN went forward in the Northern District with a test lawsuit against Anthem Blue Cross while holding its other similar claims in reserve.  The case of *California Spine and Neurosurgery Institute v. Blue Cross of California,* Case No. 18-cv-4777-PJH (Northern District of California) (*SJN v. Blue Cross*) involved one SJN claim as a test case, and came on for hearing on motion to dismiss on December 12, 2018.  (Dkt. 32) The Northern District Court filed its ruling on the test case on January 7, 2019, dismissing SJN's complaint with prejudice on the basis of an anti-assignment clause.

*SJN v. Blue Cross,* 358 F. Supp. 3d 349 (N.D. Cal. January 7, 2019).  The Northern District Court's test case ruling in Case No. 18-cv-4777 involved the same set of facts about SJN's claim administration practices as are raised again in the present action in the context of the Exhibit A claims.  In Northern District Case No. 18-cv-4777, SJN had submitted a bill to Anthem Blue Cross in the amount of $93,000.00 on February 2, 2017, but Anthem Blue Cross had paid the claim in the amount of only $2,095.34.  (Dkt. 32, p. 2)  The issue of anti-assignment was exhaustively litigated in the test case, with Anthem Blue Cross relying upon *Brand Tarzana v. ILWU* as its primary authority for the "litigation defense" argument which had previously been incorrectly set forth as a proper grounding under Ninth Circuit law.  (Dkt. 32, p. 5-7)

47.    The Northern District Court in Case No. 18-CV-04777 recognized the core provisions of ERISA law that should have been applicable (*Spinedex* and *Harlick*); However, the Northern District Court went on to reject this proper ERISA framework:

> Blue Cross did not deny SJN's claim because of the anti-assignment clause, or because HR attempted to assign his rights under the plan.  The anti-assignment clause is a litigation defense raised by defendant - - not a reason it denied SJN's claim.  Two unpublished Ninth Circuit opinions have recently agreed with the assessment.  An ERISA plan's "anti-assignment provision, however, is a litigation defense, not a substantive basis for claim denial.  The Plan did not need to raise it during the claim administration process." *Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, 706 F. App/x 442, 443 (9th Cir. 2017); *Eden Surgical Ctr. V. Cognizant Tech. Sols. Corp.,* 720 F. App'x 862, 863 (9th Cir. 2018) ("Defendants raised the anti-assignment provision after the suit commenced to contest Eden's standing to sue, not as a reason to deny benefits.").  Under that reasoning, Blue Cross did not waive the legal defense that SJN cannot bring this ERISA claim due to the anti-assignment clause, even though it is raising that defense for the first time now.  (Dkt. 32, p. 6-7)

48.    The Northern District Court in SJN's test case decided that the Memorandum Decisions in *Brand Tarzana v. ILWU* and *Eden Surgical* applied even

– 20 –

1  in the face of the contrary *Spinedex* and *Harlick* authority:

2          The court appreciates that Plaintiff has adopted a plausible - - if
3      expansive - - reading of *Spinedex* that would put it in tension with *Brand*
       *Tarzana* and *Eden Surgical Center*.  However, this court declines to read
4      *Spinedex* so expansively.  Plaintiff's reading would overextend *Spinedex's*
5      holding to reach beyond the factual scenario that court considered, and it would
       read the opinion's efforts to distinguish *Hermann Hospital* as a broad adoption
6      of Fifth Circuit precedent.  Instead, this court reads *Spinedex* in concert with the
7      subsequent Ninth Circuit decisions that are directly on point with the issue
       presented here.  In doing so, the court notes that all three opinions rely on
8      *Harlick; Brand Tarzana* itself relies on *Spinedex;* and Judge Bybee sat on the
9      panels that decided both *Spinedex* in 2014 and *Eden Surgical Center* less than
       four years later.  This court - - like the three opinions themselves and Judge
10     Bybee - - reads their holdings harmoniously.  This conclusion cannot be
11     overcome by an amended pleading.  (Dkt. 32, p. 7)

12     49.     SJN did not give up on its test case in the face of the adverse ruling in the

13 Northern District Court.  An appeal was taken in the Ninth Circuit (No. 19-15192),

14 and on June 30, 2020, the Ninth Circuit entered a Memorandum Decision reversing

15 the Northern District judgment in part and remanding SJN's test case to the lower

16 court.  *Cal. Spine & Neurosurgery Inst. v. Blue Cross of Cal.,* 2020 U.S. App. LEXIS

17 20533 (9th Cir. June 20, 2020).  The Ninth Circuit panel found that SJN had

18 adequately pleaded waiver of the Anthem Blue Cross anti-assignment provision.

19 (Dkt. 40, p. 2-3)  With respect to estoppel the Ninth Circuit Court ordered that the

20 record was incomplete, and that the Northern District Court should consider remaining

21 estoppel factors on remand.  (Dkt. 40, p. 3)

22     50.     The reversal in SJN's test case was a significant victory in the Ninth

23 Circuit, but it remained for the Ninth Circuit panel in *Beverly Oaks* to put the anti-

24 assignment clause fully to rest in its published opinion filed December 17, 2020, in

25 that separate action.  In *Beverly Oaks*, the flawed "litigation defense" rationale was

26 firmly, and finally, rejected.  Premised upon *Beverly Oaks,* SJN now proceeds with its

27 remaining claims against Anthem Blue Cross based upon equitable tolling of the

28
– **21** –

California statute of limitations during the period December 18, 2017 to December 17, 2020.  None of SJN's claims should be barred by the statute.

## FIRST COUNT
### (Against Blue Cross of California d/b/a Anthem Blue Cross)

**Enforcement Under 29 U.S.C. Section 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. Section 1132 (G)(1)**

51.     The allegations of the prior paragraphs (paragraphs 1 to 50) of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

52.     This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with ERISA Plans administered and/or underwritten by Anthem Blue Cross.

53.     SJN seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. section 1132 (a)(1)(B); and under 29 U.S.C. section 1132 (g)(1) for recovery of reasonable attorney's fees and costs.  SJN has standing to pursue these claims as the assignee of member benefits.  As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits, and is the "claimant" for the purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. section 1132 (a)(1)(B) to be brought directly against Anthem Blue Cross as the party with actual control over the benefit and payment determinations with respect to SJN's claims.

54.     By reason of the foregoing, SJN is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and SJN seeks recovery of such benefits by way of the present action.

55.     29 U.S.C. section 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  SJN has incurred, and

– 22 –

continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Blue Cross of California d/b/a Anthem Blue Cross as follows:

1. For damages against Blue Cross of California d/b/a Anthem Blue Cross in an amount to be proven at trial in connection with the healthcare benefits claim properly due and payable with respect to the services rendered to the Patients identified in Exhibit A hereto under the terms of the ERISA Plans at issue in this case.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial.

4. For such other relief as the Court may deem just and proper.


**Dated:** July 26, 2022                    Respectfully submitted,

                                            **WILLIAMS LAW FIRM PC.**


                                            By:   /s/ Richard D. Williams

                                            Richard D. Williams,
                                            Attorneys for Plaintiff California Spine
                                            and Neurosurgery Institute dba San Jose
                                            Neurospine

**FIRST AMENDED COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**