UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA DBA ANTHEM BLUE CROSS, et al.,<br><br>Defendants. | Case No. 22-cv-03782-JD<br><br>**ORDER RE MOTION TO DISMISS** |

This is an ERISA action brought by plaintiff California Spine and Neurosurgery Institute dba San Jose Neurospine (SJN), against defendant Blue Cross of California dba Anthem Blue Cross (Anthem), and Doe defendants 1 through 100. *See* Dkt. No. 39 (Third Amended Complaint or TAC). SJN asserts that its owner and principal, Dr. Abebukola Onibokun, provided surgical services to fourteen patients, all of whom were members or beneficiaries of an ERISA plan administered and/or underwritten by Anthem. *Id*. ¶¶ 3, 8-9.[1] The patients are alleged to have been participants in ERISA plans offered by a variety of employers, such as Operating Engineers H&W Trust, Tesla Motors, Inc., Pacific Gas and Electric Company, and Boeing. *Id*. ¶ 9.

SJN alleges that these patients assigned their healthcare benefit coverage rights to SJN, and in its capacity as assignee, SJN contacted Anthem in advance of providing any surgery service and was assured by Anthem that SJN "was eligible to receive benefits" at the usual and customary rates for out-of-network providers. *Id*. ¶¶ 10, 15-16. But according to the TAC, Anthem ultimately failed to pay SJN's claims "in accordance with ERISA requirements, practices and provisions." *Id*. ¶ 18. SJN consequently alleges a claim under 29 U.S.C. § 1132(a)(1)(B) "to

---

[1] There are now thirteen patients remaining at issue, as the claim relating to Patient WD has been dismissed pursuant to stipulation. Dkt. No. 51.

recover ERISA Plan benefits and enforce rights to benefits payment," and for recovery of reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1). *Id.* ¶ 53.

Anthem has moved to dismiss the TAC under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure on a number of grounds. Dkt. No. 40. The motion is granted and denied in part.

## DISCUSSION

1. Anthem's argument that it is "impossible to determine from Plaintiff's allegations what benefits have been denied and/or whether Plaintiff contends that the denials were improper under the terms of the plans," Dkt. No. 40-1 at 8, does not fairly reflect the allegations in the TAC. SJN identified the patients at issue (by their initials) and specifically alleged their respective ERISA plan that was administered/and or underwritten by Anthem. TAC ¶¶ 8-9. SJN further alleged:

> In the present case for example, the Anthem Blue Cross entity representative advised SJN's representative that the payment profile under the Pacific Gas & Electric Company ("PGE plan") in this case would be based on UCR [usual and customary rates] at an 80% rate and that payment to SJN would not be based on any Medicare fee schedule. The Anthem Blue Cross entity representative also advised Plaintiff that the PGE ERISA plan utilized an Anthem Blue Cross PPO as primary insurance, with no pre-existing exclusion clause: no daily maximum, and an unlimited lifetime maximum. The PGE plan was represented to be subject to an individual deductible of $1,000.00 and a family deductible of $2,000.00. Plaintiff is informed and believes that while the percentage payment rates and deductible rates varied from plan to plan, the basic structure of the PGE Plan is representative of the other Plans at issue in this case.

*Id.* ¶ 15(d). The TAC also attached a table with patient identifiers, specifying per patient their "DOS" (presumably date of service), the "billed amount," and the "paid amount." *Id.*, Ex. A. In light of these and other similarly detailed allegations in the TAC, this is not at all a situation where Anthem, in trying to respond to the TAC, "would have little idea where to begin." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (2007).

2. Anthem says that the TAC should be dismissed because SJN "concedes that it appealed 'many' -- but not all -- of the alleged reductions," and SJN consequently has not "allege[d] it exhausted administrative remedies for all the claims at issue." Dkt. No. 40-1 at 10. "Generally, before ERISA participants or beneficiaries can bring suit to recover plan benefits, they

2

must exhaust a plan's internal claims procedure. Exhaustion is required for a variety of reasons, including to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement of all concerned. Because the exhaustion requirement is a creation of the federal courts, however, and is not written into the statute, it is a prudential rather than jurisdictional requirement." *Mack v. Kuckenmeister*, 619 F.3d 1010, 1020 (9th Cir. 2010) (cleaned up).

SJN has alleged that Anthem, in its "Explanation of Benefits" documents and appeal response documents, "has violated the applicable claims procedure regulations governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1(b)," and so SJN should be deemed by law to have exhausted the administrative remedies under the plans at issue. TAC ¶¶ 21-24; *see also* Dkt. No. 42 at 8-9; 29 C.F.R. § 2560.503-1(l)(1) ("in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim"). On this record and at this stage of the case, the Court declines to dismiss SJN's claims for a failure to administratively exhaust, but Anthem may renew these arguments at a later stage of the case, as circumstances warrant.

3.  Anthem's request to dismiss the "seven claims with dates of service between 2014 and 2017" as time-barred is granted. *See* Dkt. No. 40-1 at 11. The parties agree that the applicable statute of limitations period here is California's four-year period for contract disputes. *See id.*; Dkt. No. 42 at 10. SJN forthrightly states that it "does not allege that it was not aware that the claims prior to 2018 existed." Dkt. No. 42 at 14. SJN does not dispute that it "already filed a federal lawsuit asserting the same claims against Anthem more than four-and-a-half years earlier," when, "[i]n January 2018, Plaintiff -- represented by the same attorneys -- filed an ERISA action against Anthem and other entities for the recovery of benefits under 29 U.S.C. § 1132(a)(1)(B),

3

1    and identified the same seven claims with dates of service between 2014 and 2017." Dkt. No. 40-
2    1 at 12 (emphases omitted).

3          SJN's explanations for treating the pre-2018 claims as timely are not well taken. Even
4    assuming that Anthem "failed to provide a final determination" of claim denials, Dkt. No. 42 at
5    11, SJN was clearly aware of its legal claims, as evidenced by its 2018 lawsuit, which means that
6    the four-year statute of limitations was triggered. *See Chuck v. Hewlett Packard Co.*, 455 F.3d
7    1026 (9th Cir. 2006) ("a plan's noncompliance with § 1133 does not prevent *per se* the triggering
8    of ERISA's statute of limitations. Instead, we hold that, while a great deal of caution is necessary
9    before finding a claim barred by ERISA's statute of limitations notwithstanding a plan's violation
10   of § 1133, an investigation of the facts of each case is necessary to determine whether a plan
11   nevertheless foreclosed a claimant from any reasonable belief that the plan had not finally denied
12   benefits."); *id.* at 1036 ("The facts of this case convince us that, despite the Plan's failure to notify
13   Chuck of his appeal rights or of the full justification for its denial of benefits, Chuck nevertheless
14   had reason to know of the Plan's final repudiation of his claim by no later than March 1992, such
15   that his claim is time-barred.").

16         SJN's suggestion that the statute of limitations should be tolled because of "extraordinary
17   circumstances" is misdirected. SJN points to a holding in *Brand Tarzana Surgical Institute, Inc. v.
18   International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan*, No. CV
19   14-3191 FMO (AGRx), 2016 WL 3480782, at *8 (C.D. Cal. Mar. 8, 2016), to the effect that "the
20   Plan's failure to raise the anti-assignment provision prior to this litigation did not constitute waiver
21   in and of itself because anti-assignment is not a substantive basis for denial." In SJN's view, this
22   holding was "wrong," but the Ninth Circuit panel that heard the case on appeal affirmed it. Dkt.
23   No. 42 at 13; *see Brand Tarzana Surgical Inst. v. Int'l Longshore and Warehouse Union-Pacific
24   Mar. Ass'n Welfare Plan*, 706 F. App'x. 442 (9th Cir. 2017).

25         SJN says that if it had filed its claims earlier, they "would have been barred by the ruling in
26   the district court" in *Brand Tarzana*. Dkt. No. 42 at 14. In SJN's words, "[w]ith respect to anti-
27   assignment, the erroneous framework adopted by the District Court in 2016 was put aside on
28   December 17, 2020 when the Ninth Circuit put anti-assignment law back on a proper footing in its

4

published *Beverly Oaks* decision, but until corrective action was taken in *Beverly Oaks* in 2020, healthcare providers such as SJN had no realistic or viable means of pursuing their assignment-based healthcare claims in Federal Courts." *Id.* (emphases omitted). In *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois*, 983 F.3d 435, 440-41 (9th Cir. 2020), the circuit held that "Beverly Oaks pleaded adequately facts supporting waiver" because "at no time during the administrative claim process did Blue Cross raise the anti-assignment provision as a basis to deny benefits." Significantly, the *Beverly Oaks* panel referenced the unpublished decision in *Brand Tarzana*, 706 F. App'x. 442, but noted that an unpublished decision is "not binding on [the panel] as precedent, and as such, cannot supersede our holdings in *Spinedex* and *Harlick*, which are binding. Moreover, those decisions do not ultimately support the position advocated by Blue Cross here." *Beverly Oaks*, 983 F.3d at 441.

SJN's belief that its claims, if brought earlier, "would have been barred by the ruling in the district court," Dkt. No. 42 at 14, profoundly misunderstands the structure of the federal courts. District courts are trial courts, whose rulings, even if influential, bind only the parties before the court in that specific case. The circuit's affirmance of the district court in an unpublished memorandum disposition was not precedential. *See* Ninth Circuit Rule 36-3. And the circuit in *Beverly Oaks* was not changing the law, as SJN proposes. It held that "[t]he district court erred in finding waiver inapplicable as a matter of law," reasoning that, "[u]nder *Spinedex*, Beverly Oaks alleged plausibly that Blue Cross waived the anti-assignment provisions in the Teamsters, Williams Lea, and Woodward Plans. Blue Cross thus cannot raise the anti-assignment provision for the first time in litigation when Blue Cross held that provision in reserve as a reason to deny benefits." *Beverly Oaks*, 983 F.3d at 442. The main case that the *Beverly Oaks* panel relied on was *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014), a 2014 decision. As the *Beverly Oaks* panel expressly noted, the circuit's previously published decisions in *Spinedex* and *Harlick v. Blue Shield of Cal.*, 686 F.3d 699 (9th Cir. 2012), remained "binding," regardless of what other district court orders or unpublished circuit decisions may have held in the meantime. *See Beverly Oaks*, 983 F.3d at 441. SJN's

argument that the statute of limitations should be tolled between 2016 and 2020 because of the district court's decision in *Brand Tarzana* simply does not fly.

SJN's claims for the services provided to Patients ML, SE, KM, RJ, CY, CR, and SK between 2014 and 2017 are consequently barred by the statute of limitations and are dismissed without leave to amend, as further amendment would be futile.

4. Anthem's concluding argument is for the dismissal of the "100 placeholder Doe defendants." Dkt. No. 40-1 at 15. There is no express rule permitting or prohibiting this pleading of Doe defendants, but even so, one hundred Doe defendants is a bit much. This pleading practice is all the more problematic because SJN's allegations about who these Doe defendants might be and why they cannot be identified at this time are wholly conclusory. *See* TAC ¶ 12 ("The true names and capacities of the Defendants sued herein as Does are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names. Plaintiff is informed and believes that the DOES are those individuals, corporations and/or business or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein."). Further, the TAC contains no substantive allegations at all that reference any potential conduct by a Doe defendant. *See* TAC. The Doe defendants are consequently dismissed. The dismissal is without prejudice to a later request by SJN to add additional defendants, as warranted.

## CONCLUSION

The Doe defendants are dismissed from the action, and SJN's claims for services provided to Patients ML, SE, KM, RJ, CY, CR, and SK between 2014 and 2017 are dismissed without leave to amend. Anthem's motion to dismiss, Dkt. No. 40, is otherwise denied.

**IT IS SO ORDERED.**

Dated: September 22, 2023

JAMES DONATO
United States District Judge